LEWIS F. HALL, Respondent, *v.* HARRY SCHIFF, Appellant.

First Department, November 9, 1917. ·

**Principal and agent — broker's action for commissions — evidence
not justifying recovery.**

Broker's action for commissions claimed to have been earned by procuring
    a purchaser for real estate.   The action is brought against the defendant
    personally, he being the president and chief stockholder of a corporation
    which held title to the lands.   On the trial it appeared that although the
    plaintiff's original agreement was made with the defendant he subsequently
    learned that the title to the lands was in the corporation, that it was in
    the hands of a receiver and that a sale could not be effected unless consent
    of creditors could be obtained.   The lands were never sold to the customer
    produced by the plaintiff owing to the fact that the sum offered by him
    was insufficient to satisfy the creditors and the lands were subsequently
    sold by the corporation to another person.   On all the evidence, *held,*
    that the plaintiff was not entitled to recover in that the services performed
    were in negotiating a sale of the premises for the corporation which he
    knew would depend upon obtaining the consent of the creditors, and
    that his original contract of employment was voluntarily modified by
    mutual consent.

APPEAL by the defendant, Harry Schiff, from a judgment of
the Supreme Court in favor of the plaintiff, entered in the
office of the clerk of the county of New York on the 2d day of
July, 1915, upon the verdict of a jury, and also from an order
entered in said clerk's office on the 3d day of August, 1915,
denying defendant's motion for a new trial made upon the
minutes, and also for a new trial on the ground that certain
papers not in evidence were inadvertently delivered to the
jury by plaintiff's counsel.

*Alton B. Parker* [*S. Stanwood Menken* and *Stephen P.
Anderton* with him on the brief], for the appellant.

*Thomas C. Ennever* [*Henry Siegrist* with him on the brief],
for the respondent.

LAUGHLIN, J.:

The plaintiff alleges that he was employed by the defendant
on or about the 22d of April, 1913, as a broker to procure a

purchaser for premises known as " The Cleburne," an apartment house known as No. 924 West End avenue in the borough of Manhattan, New York; that the defendant promised and agreed to pay him a commission equal to one per cent of the purchase price; that he did procure for the defendant a responsible person ready, willing and able to purchase the premises upon the defendant's terms and conditions, and that his services were reasonably worth the sum of $11,900. He recovered a verdict for that amount and interest.

The premises were owned by the "West 82nd St. Realty Co.," which was incorporated on the 7th day of February, 1911, and of which defendant was the president and the owner of forty-eight of the fifty shares of its capital stock, his wife and brother each owning one of the others. It appears that title to the premises was first taken by the defendant individually and that he thereafter conveyed to the corporation, but it does not appear either when he acquired title or when he conveyed to the company otherwise than that at all the times in question the title was in the company. The plaintiff testified that when the negotiations were opened between him and the defendant he was not aware that the premises were owned by the corporation, but that during the progress of the negotiations and before he had obtained a customer ready, willing and able to purchase, and on the 24th of November, 1913, he became aware of the fact that the title was in the company from seeing a newspaper announcement that a receiver had been appointed for the company and that it owned the premises. The plaintiff testified that his attention was drawn to the purchase of the premises by the defendant and that he had an interview with the defendant at the premises in the month of August, 1912, at which he suggested that if the defendant would build a good house on the premises he could sell it for him and that he had in mind a responsible purchaser, naming one Noakes, to whom the defendant had previously through the plaintiff offered another apartment house, and that defendant replied that he would build a good house; that on the 22d of April, 1913, when the apartment building was in process of erection he had another interview with the defendant who then suggested that he bring Noakes up to see the building and that at his request the defendant

then gave him the floor plans to exhibit to Noakes and the general terms upon which the premises would be sold, which were for $1,700,000, title to be taken subject to a mortgage for $950,000; that from that time on he frequently interviewed Noakes with a view to selling the premises to him down to the 23d of October, 1913, when by appointment he and Noakes met the defendant at the premises and he introduced them; that after that interview and on the 19th of December, 1913, he received from the defendant a statement of the rents which it was expected the apartment would yield for his use in negotiating with Noakes; that negotiations were continued down to the 19th of February, 1914, when he had a further talk with the defendant with respect to the selling price. It would seem that in the meantime the selling price had undergone a substantial change, not explained, for then, according to plaintiff's testimony, he and the defendant were discussing the sale of the premises subject to two mortgages aggregating $1,000,000 and for $180,000 for the owner's equity, the owner, however, to have in addition the rents until the month of October thereafter. The plaintiff further says that at this interview he informed the defendant that Noakes was willing to make the deal with the exception that he was not willing to turn over the rents, and that the defendant refused to yield on that point and that plaintiff thereupon declared that the deal was off, but that finally he informed the defendant that Noakes was willing to give $190,000 for the equity which was $10,000 more than defendant had been asking, and that thereupon defendant said he would accept Noakes' terms provided Noakes would pay the commission, and that upon plaintiff's refusal to act upon that suggestion the defendant endeavored to have him consent to taking a commission of $5,000, but upon his refusal defendant agreed to meet at the office of defendant's attorney that afternoon to make the contract; that instead of meeting on that day they had two meetings on the succeeding day at the last of which a contract for the sale of the premises by the corporation to Noakes was prepared and signed by Noakes and by the defendant as president of the company; that prior to the signing of that contract he signed and delivered to the defendant's attorney a writing addressed to the company to the effect that all commissions

First Department, November, 1917.　　　[Vol. 179.

received by him on the sale of the premises over and above $5,000 should be paid to one Henry Fox and that payment to Fox of the balance over and above $5,000 should be full satisfaction of his claims for commissions and that if the transaction with Noakes was not consummated for any reason whatsoever he should have no claim either against the company or against the defendant. The plaintiff conceded while on the witness stand that on and after the 24th of November, 1913, he knew that title to the premises was in the corporation, for which a receiver had been appointed; that the value of real estate was depreciating and that the financial affairs of the company were badly involved; that it would be necessary to obtain the consent of the creditors of the company before there could be a sale of the premises, and that with this knowledge he continued the negotiations with Noakes and with a view to earning his commission he attended a meeting of the creditors of the company at which he heard statements made with respect to its indebtedness, and that it was part of the terms of sale which he negotiated with Noakes that any contract made would be conditioned upon the consent of the creditors of the company being obtained to allow this property to be sold and to hold other real property of the company. After learning that the company owned the premises and that its affairs were in the hands of a receiver the plaintiff made no claim that he was negotiating a sale of the premises by the defendant individually and he did not show or offer to show that he procured a purchaser ready, willing and able to take the premises from the defendant individually and he offered the contract between the company and Noakes in evidence as evidencing the contract which he was employed to negotiate. He did not at the time the contract was signed make any claim that his commissions had been earned or that he was then entitled to payment. The contract which he thus offered in evidence contained an express provision that its performance by the company was conditioned upon the company's obtaining the approval of the court to such an extent as might be necessary to effect a settlement with the creditors of the company on the basis of a composition which the company agreed forthwith to offer to its creditors for the settlement of their claims for

seventy-five per cent thereof, two-thirds to be paid in cash and one-third in notes and on the consent of the creditors to such settlement. The plaintiff does not say whether he read or heard the contract for a sale of the premises by the company to Noakes read, but he was present when it was signed and so far as the provision making it conditional upon obtaining the consent of the creditors is concerned he conceded that such was the condition upon which he negotiated the contract, and that at the time it was signed he understood that performance thereof depended upon the company's obtaining sufficient funds to satisfy the creditors and get out of bankruptcy. The contract thus negotiated was not performed, but was canceled by Noakes at the request of the company on payment to him of $5,000 which he demanded for canceling it, and the premises were thereafter sold and conveyed by the company to one Phipps from whom evidently the company received a larger cash payment than it was to receive from Noakes. After the plaintiff learned that the contract had been canceled and that the premises had been deeded to Phipps he demanded a commission of $5,000 in accordance with the memorandum he had signed before the signing of the contract, but subsequently by bringing this action claimed a commission of one per cent on the selling price specified in the contract. On the trial the plaintiff gave evidence tending to show that he was induced to sign the memorandum, which he signed before the execution of the contract, on the representation of the attorney for the defendant that unless he did so the contract would not be executed; but on the part of the defendant evidence was given tending to show that Fox had asserted a claim under an agreement with plaintiff for part of the commission and that plaintiff signed the memorandum voluntarily and with a view to enabling the company to perform the contract, owing to the payments it would be required to make to obtain the consent of its creditors, and that there was no coercion.

Under the charge the verdict could not in any event be sustained for more than $5,000, for the court instructed the jury that if they believed that the contract was made as claimed by the plaintiff, and that at the last moment before it was signed he agreed to a reduction of his commission to

$5,000, he could only recover that amount and interest; but we are of opinion that the verdict cannot be sustained for any amount.

On the part of the defendant evidence was given tending to show that the company was unable to effect a settlement with its creditors on the basis of the contract and that the demands of the creditors were such that they could be met by the cash payment to be made by Noakes under the contract. The plaintiff now claims and evidently claimed on the trial that his commission was earned when the defendant yielded to Noakes' terms, and that he was not bound by the provisions of the contract making performance conditional upon the company's ability to obtain the consent of the creditors to the composition which it was to offer them. Manifestly, that contention is unsound for when the plaintiff according to his own testimony learned that the company owned the property and that its affairs were in the hands of a receiver and that the property could not be sold without the consent of the creditors he had not obtained a purchaser and, therefore, had not earned a commission. The services he subsequently performed were in negotiating a sale of the premises by the corporation which he knew would depend upon obtaining the consent of the creditors. Of course it was competent for the defendant to obligate himself to pay the plaintiff's commission, but if that was the effect of the original employment it was, in effect, modified by mutual consent and in the circumstances the commission would not be earned upon the signing of the contract but only upon performance thereof unless failure of performance was owing to the fault of the defendant which is not shown by the mere fact that the contract was canceled for a consideration paid to Noakes. That was an important point in the case and while perhaps it became a question of fact on the theory that it may not be said that the evidence adduced in behalf of the defendant conclusively established the inability of the corporation to perform the contract yet the case was not so submitted to the jury that it follows from their verdict that they passed upon this question of fact adversely to the defendant. On the contrary, the court appears to have left it to the jury to say as a question of fact whether or not the

plaintiff had earned his commission upon the signing of the contract, and whether he was bound by the condition that performance of the contract was conditional upon the company's obtaining the consent of its creditors. We are of opinion that as matter of law the plaintiff was bound by that provision of the contract, or in other words that his right to recover a commission was subject to performance of the contract as contemplated, and that the jury should have been so instructed. The court did not so instruct them, but merely charged that in determining whether or not the plaintiff had earned the commission under his contract with the defendant, to which the court drew attention that no such condition was attached, the jury might consider the provisions of the contract made between the company and Noakes with respect to the consent of the creditors; and at the close of the charge pointedly submitted to the jury the question as to whether the plaintiff performed the contract which he made with the defendant and as to whether the terms of sale laid down by the defendant were met by the purchaser and that if they were the plaintiff was entitled to recover. The court refused to charge that the jury should bear in mind that the plaintiff stated that he knew the performance of the contract by the company was conditioned upon its obtaining sufficient money to satisfy its creditors, which testimony the plaintiff in no manner modified or qualified, but instead instructed the jury that they might take into account all of the testimony in the case. As already observed, it is not at all clear that the jury passed upon the question of fact as to whether the contract was canceled owing to the inability of the company, represented by defendant, to perform it, but if they did their verdict in that regard is clearly against the weight of the evidence.

It follows that the judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

SCOTT, SMITH, PAGE and DAVIS, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.